UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| United States of America, | ) | CRIMINAL NO. 3:08-604-CMC |
| | ) | |
| v. | ) | **OPINION and ORDER** |
| | ) | |
| Paul Anthony Holmes, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on Defendant's motion for relief filed in this court pursuant to 28 U.S.C. § 2255. The Government filed a motion for summary judgment. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Defendant of the summary judgment procedure and the consequences if he failed to respond. On January 9, 2012, Defendant filed a response in opposition to the Government's motion for summary judgment. Therefore, this matter is ripe for review.

Defendant asserts that his trial counsel and his appellate counsel provided ineffective representation during the plea negotiation and appellate phases of his case. The Government has responded in full, citing extensively to the transcripts of several hearings held in this matter and attaching affidavits of counsel. The court has reviewed the complete record in this case.

Defendant maintains in his sworn petition and in the affidavit filed in response to the Government's motion for summary judgment that counsel were ineffective in several ways.[1] Defendant contends that his guilty plea was invalid because he informed counsel that he was

---

[1] In his Memorandum in Support of his § 2255 motion, Defendant references an affidavit which he contends is attached as Exhibit 7 to his motion for relief. However, no such affidavit was received.

1

"innocent" of the conspiracy charge (that at most he had a buyer-seller relationship with one of the witnesses against him); that counsel John Mobley told Defendant that if he did not plead guilty, the Government would pursue a murder charge against him and would commence forfeiture proceedings against the home of Defendant's fiancee; that counsel assured Defendant he would not be held responsible for over one kilogram of heroin, would be sentenced at a base offense level 32, with a resulting sentencing range of 168 to 210 months' imprisonment and that if he pleaded guilty, Mobley would file a suppression motion relating to heroin seized in North Carolina "and get the evidence suppressed, and thus, none of the evidence could be used against me." Aff. at 1-2 (ECF. No. 187-1, filed Jan. 9, 2012).

Defendant also argues that appellate counsel was ineffective. Defendant contends that she should have argued on appeal that this court violated Defendant's Sixth Amendment right to counsel of his choice, citing *United States v. Gonzales-Lopez*, 548 U.S. 140 (2006), in support of his argument.

### STANDARD

The standard governing ineffective assistance of counsel claims is found in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to succeed on such a claim, Defendant must first show that his counsel's performance was "deficient," *Strickland*, 466 U.S. at 687-88, and that such deficiency resulted in actual prejudice to Defendant. *Id*. As to the first prong of the *Strickland* test, a defense attorney's conduct is deficient if it fails to meet a standard of "reasonably effective assistance." *Id*. at 687. A reviewing court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690. *See also Lockhart v. Fretwell*, 506 U.S. 364, 371-72 (1993).

The same two-part test applies in the context of cases in which a defendant entered a guilty plea. But because "[p]lea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks," strict adherence to the deferential *Strickland* standard is "all the more essential when reviewing the choices an attorney made at the plea bargain stage." *Premo v. Moore*, 562 U.S.___, 31 S.Ct. 733, 741 (2011). To establish prejudice in the context of a guilty plea Defendant must show that "there is a reasonable probability that, but for counsel's error, [Defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "The added uncertainty that results when there is no extended formal record and no actual history to show how the charges have played out at trial works against the party alleging inadequate assistance." *Premo*, 562 U.S. ___, 131 S. Ct. at 745 (2011).

In applying *Strickland* to claims of ineffective assistance of appellate counsel, this court accords appellate counsel the "presumption that [s]he decided which issues were most likely to afford relief on appeal." *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993). Appellate counsel is not obligated to assert all nonfrivolous issues on appeal; there is hardly any question about the importance of examining the record and having appellate counsel select the most promising issues for review. *Jones v. Barnes*, 463 U.S. 745, 752 (1983); *see also Smith v. South Carolina*, 882 F.2d 895, 899 (4th Cir. 1989). "'Winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751). S*ee also Smith v. South Carolina*, 882 F.2d at 899 (counsel's failure to raise a weak constitutional claim may constitute an acceptable strategic decision designed "to avoid diverting the appellate

3

court's attention from what [counsel] felt were stronger claims"). Although it is possible to bring a successful ineffective assistance of appellate counsel claim based on failure to raise a particular issue on direct appeal, the Supreme Court has reiterated that it is "difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome'" *Id.* at 288 (quotation and citation omitted). To establish prejudice relating to the actions of appellate counsel, Defendant must establish a reasonable probability that, but for his counsel's unreasonable failure to include a particular issue on appeal, he would have prevailed on his appeal. *See id.* at 285-86.

**DISCUSSION**

**GROUND ONE – INEFFECTIVE ASSISTANCE OF COUNSEL DURING PLEA NEGOTIATIONS**[2]

Several of Defendant's claims go to actions of counsel during the plea process. As noted above, Defendant contends that he informed counsel that he was "innocent" of the conspiracy charge (that at most he had a buyer-seller relationship with one of the witnesses against him); that he informed counsel that "he did not sell anywhere near 1 kilogram of heroin," Memo. in Support of Mot. at 12 (ECF No. 170-1, filed Aug. 26, 2011); that counsel John Mobley told Defendant that if he did not plead guilty, the Government would pursue a murder charge against him and would commence forfeiture proceedings against the home of Defendant's fiancee; that counsel assured Defendant that he would not be held responsible for over one kilogram of heroin "despite the language in the plea agreement and indictment," *id.*; that Defendant "could expect to receive a

---

[2]Defendant does not allege that counsel's alleged error was a failure to communicate a more favorable plea agreement, the issue decided by the United States Supreme Court in *Missouri v. Frye*, 132 S. Ct. 1399 (2012).

4

sentence of 151-168 months[,]" *id.*; and that if Defendant pleaded guilty, defense counsel would file a suppression motion relating to heroin seized in North Carolina "and get the evidence suppressed, and thus, none of the evidence could be used against me." Aff. at 1-2 (ECF. No. 187-1, filed Jan. 9, 2012).

The sworn statements Defendant made during his plea colloquy bar his subsequent averments to the contrary. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74, (1977). "[R]epresentations of the defendant . . . at [plea] hearing[s] . . . constitute a formidable barrier in any subsequent collateral proceedings," *id.* at 73-74, because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003). *See also Crawford v. United States*, 519 F.2d 347, 350 (4th Cir. 1975) ( "[T]he accuracy and truth of an accused's statements at a Rule 11 proceeding in which his guilty plea is accepted are 'conclusively' established by that proceeding unless and until he makes some reasonable allegation why this should not be so." ), *partially overruled on other grounds by United States v. Whitley*, 759 F.2d 327 (4th Cir.1985) (en banc). "To allow indiscriminate hearings in federal post-conviction proceedings . . . would eliminate the chief virtues of the plea system-speed, economy, and finality." *Blackledge*, 431 U.S. at 71. Thus, in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the defendant's sworn statements made during a properly conducted Rule 11 colloquy are always "palpably incredible" and "patently frivolous or false." *Id.* at 76. *See also Crawford*, 519 F.2d at 350 (holding that "the district court was not required to conduct an evidentiary exploration of the truth of an allegation in a § 2255 motion which amounted to no more than a bare contradiction of statements made by [the defendant] when he pleaded guilty").

During the Rule 11 proceeding held February 25, 2009, Defendant, under oath, specifically admitted his involvement in a heroin distribution conspiracy which involved the distribution of at least one kilogram of heroin. *See* Change of Plea Tr. at 67 (ECF No. 151, filed Dec. 14, 2009). Additionally, Defendant attested that no one had threatened or coerced him into entering a guilty. plea. *Id.* at 51. Defendant specifically acknowledged under oath that he understood the applicable statutory penalty, that any estimate that counsel may have given him of the applicable sentencing guidelines range was only an estimate, and that until the Presentence Report (PSR) was written and the court had ruled on any objections, counsel's estimate was not a guarantee of what the applicable sentencing range might be. *Id.* at 56-57. The court thereafter accepted Defendant's plea of guilty to conspiracy to distribute a kilogram or more of heroin. *Id.* at 70.

Defendant produces no evidence, nor does he even allege, that his counsel would have had any reason to believe Defendant did not or could not understand the court's comprehensive Rule 11 proceeding, and fails to put forth any plausible reason why his statement of guilt at the Rule 11 hearing should not be accepted as true. In the absence of any evidence Defendant was incompetent or incapable of participating in the Rule 11 proceeding, Defendant cannot claim that his counsel was ineffective for permitting him to answer the court's questions, after being advised by the court and affirming that he understood the elements of the offenses charged, the potential sentence attaching to that charge, and the facts supporting the charge. Accordingly, Defendant has failed to show that counsel was ineffective in his representation of Defendant through Defendant's entry of the guilty plea.

Defendant also maintains counsel was ineffective in failing to move to suppress evidence seized as a result of a traffic stop in North Carolina on October 7, 2008. Ultimately, this evidence

6

was used at sentencing to calculate the weight of heroin attributable to Defendant. Defendant does not contend that the motion should have been made prior to the entry of his guilty plea.[3]

It cannot be said that counsel was ineffective in failing to file a motion to suppress. Even if the North Carolina evidence had been seized in violation of the Fourth Amendment, the exclusionary rule does not generally bar consideration of illegally seized evidence during sentencing proceedings for the purpose of making findings required under the Guidelines.[4] *See United States v. Lee*, 540 F.2d 1205, 1207 (4th Cir. 1976) (pre-Guidelines case holding that "reliable but illegally obtained evidence may generally be considered" at sentencing); *United States v. Nichols*, 438 F.3d 437 (4th Cir. 2007) (relying on *Lee* to hold that statement obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), was admissible at sentencing). *See also United States v. Brimah*, 214 F.3d 854, 857-59 & n.4 (7th Cir. 2000) (holding exclusionary rule at sentencing should not bar introduction of evidence seized in violation of Fourth Amendment, but leaving open question of whether the rule applies when police intentionally act illegally to enhance defendant's sentence).[5]

---

[3] Defendant did not contest the constitutionality of the traffic stop before he entered his guilty plea. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea," *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), except in narrow circumstances, *Menna v. New York*, 423 U.S. 61, 62-63 n.2 (1975). After entering a guilty plea to the charges against him, Defendant cannot challenge the alleged constitutional instability in the events occurring before he entered his plea, as the plea acts as a "break in the chain." *Tollett*, 411 U.S. at 267.

[4] The North Carolina traffic stop yielded 140.3 grams of heroin.

[5] Most of the circuits to have addressed this issue have "added or left open the possibility that the exclusionary rule will still apply if there is an indication that the police violated the defendant's Fourth Amendment rights with the intent to secure an increased sentence." *United States v. Acosta*, 303 F.3d 78, 85 (1st Cir. 2002). No such argument was made at Defendant's sentencing. Defendant contended in his Objections to the PSR that no warrant had been obtained to search the car, and that no exception to the warrant requirement existed. Obj. to Presentence Report at 8 (ECF No. 124, filed July 13, 2009).

7

Even if counsel was ineffective in failing to file a motion to suppress drug weights *after* Defendant entered his guilty plea, Defendant was afforded the opportunity to file *pro se* objections to the PSR and did raise the constitutionality of the traffic stop at sentencing. *See* Sentencing Hrg. Tr. (Vol. II) at 3-8 (ECF No. 158, filed Jan. 4, 2010). Defendant presented no evidence regarding his argument, and the objection was overruled. Therefore, Defendant suffered no prejudice as a result of counsel's alleged failure.[6]

### INEFFECTIVE ASSISTANCE OF COUNSEL – APPEAL

Defendant contends that appellate counsel was ineffective in failing to argue that he was deprived by this court of counsel of his choice in contravention of *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006). Defendant contends this court required that he proceed with John Mobley as counsel, which "ultimately forced [Defendant] to plea[d] to charges he was innocent of committing. Moreover, had [Defendant] been allowed to retain another attorney, he would have proceeded to trial and not pled guilty." Memo. in Support of Mot. to Vacate at 21. Defendant contends that had appellate counsel raised this issue on appeal, "the results [of Defendant's appeal] would have been different, and [Defendant's] case would have been remanded back to the District Court . . . ." *Id.* at 23.

As noted above, in applying *Strickland* to claims of ineffective assistance of appellate counsel, this court accords appellate counsel the "presumption that [s]he decided which issues were most likely to afford relief on appeal." *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993).

---

[6]Defendant did not raise this issue on appeal. Therefore, if Defendant attempted to raise it directly in this motion under § 2255, it would be defaulted, and would not be considered by this court unless Defendant could show cause and actual prejudice or actual innocence. *See Bousley v. United States*, 523 U.S. 614, 622 (1998). Defendant has failed to offer evidence or argument which meets this standard.

8

"Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (quotation and citation omitted).

When a defendant alleges his appellate counsel failed to include an issue on direct appeal, the merits of the omitted issue must first be evaluated. *United States v. Cook*, 45 F.3d 388, 392 (10th Cir. 1995). In response to Defendant's motion, attorney Marcia Shein prepared an affidavit indicating that she did not raise the "counsel choice" issue on appeal and that she does not recall being asked to do so by Defendant. Aff. of Marcia Shein at ¶ 22 (ECF No. 181-2, filed Nov. 15, 2011). Shein does not address whether or not a *Gonzalez-Lopez* argument would have had any merit. Therefore, for purposes of this motion, the court assumes that failure to include a *Gonzalez-Lopez* argument was ineffective assistance of counsel.

However, even if counsel had been ineffective in failing to include a *Gonzalez-Lopez* argument on Defendant's appeal, Defendant still would have to show that the failure to include this argument prejudiced him. That is, even though a finding of *Gonzalez-Lopez* error is a structural error which requires no *Strickland*-like analysis, *see generally, Gonzalez-Lopez*, 548 U.S. 140, the court of appeals would still have had to determine whether the alleged denial of counsel of choice was itself erroneous before Defendant would have been afforded relief.

**APPELLATE REVIEW**

In *Gonzalez–Lopez*, the Supreme Court held that when a court wrongly denies a defendant counsel of choice, the error is structural and, thus, not subject to harmless error analysis. *Id*. at 150. The Court distinguished a violation of the right to effective assistance of counsel, "which generally requires a defendant to establish prejudice," *id*. at 146, from a violation of the right to counsel of

9

one's choice, which occurs the moment that the chosen counsel is erroneously withheld, *id*. at 148. As is relevant to this case,[7] courts must consider the risks and problems associated with a substitution of counsel, including whether substitution would disrupt the proceedings and the administration of justice. Courts have "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar" and retain the discretion to "make scheduling and other decisions that effectively exclude a defendant's first choice of counsel." *Gonzalez-Lopez*, 548 U.S. at 152. Only a trial court's unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the Sixth Amendment. *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983). Generally, where substitution of retained counsel would delay the proceedings, the defendant must demonstrate good cause for the substitution, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict between the defendant and counsel.

"In reviewing substitution motions, the . . . factors [for consideration of substitution motions] . . . generally include: the timeliness of the motion; the adequacy of the district court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Martel v. Clair*, 565 U.S. __, 132 S. Ct. 1276, 1287 (2012).

---

[7]Other factors affect whether any attorney a defendant chooses may appear in a particular matter. First, "an advocate who is not a member of the bar may not represent clients (other than himself) in court." *Wheat v. United States*, 486 U.S. 153, 159 (1988). Second, a defendant may not "insist on representation by an attorney he cannot afford or who for other reasons declines to represent the defendant." *Id*. at 159. Third, a defendant may not "insist on the counsel of an attorney who has a previous or ongoing relationship with an opposing party, even when the opposing party is the Government." *Id*. This is because "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id*. at 160.

*See also United States v. Reevey*, 364 F.3d 151, 156 (4th Cir. 2004) ("In assessing this issue, we are obliged to consider three factors: (1) the timeliness of his [m]otions; (2) the adequacy of the [district] court's inquiry into his complaint about counsel; and (3) whether [the defendant] and his counsel experienced a total lack of communication preventing an adequate defense. ").

Therefore, the Fourth Circuit would have reviewed this court's denial of substitution of counsel under an abuse of discretion standard. *Id*. This court therefore applies the same review standard to Defendant's assertion of error.

### BACKGROUND

Defendant was arrested by authorities on October 7, 2008, and thereafter retained attorney John T. Mobley. The undersigned held three pretrial conferences in this matter at which both Defendant and counsel were present: December 2, 2008; January 12, 2009; and February 18, 2009. At the February 18, 2009, hearing, the court denied Defendant's motion for a continuance beyond the term of court which was to begin with jury selection on February 26, 2009, and set Defendant's trial to begin March 9, 2009.

On February 25, 2009, the court convened another pretrial conference in the belief that the parties had reached a plea agreement. At the beginning of that hearing, the Assistant United States Attorney indicated that Defendant had approached him and inquired if he "would have – the same [plea] offer would be made if another lawyer was appointed." Tr. of Pretrial Conf. at 2 (ECF No. 151, filed Dec. 14, 2009). Based on these concerns, the court conducted an *ex parte* hearing into Defendant's oral statement to the prosecutor.

11

In addition to his statement to the prosecutor, Defendant contended that he had mailed a motion to the court for substitution of counsel at the same time he had filed another *pro se* motion.[8] *See* Tr. of Pretrial Conf. at 9-11 (ECF No. 107, filed May 19, 2009).[9] However, this motion for substitution was never received by the court. Additionally, Defendant indicated on February 25 that he had "intentions when we came to court tomorrow . . . I was going to bring it up then." *Id*. at 5.

During the hearing, Defendant maintained that he did not trust Mobley (his then-current counsel) because counsel had allegedly not obtained a copy of Defendant's prior conviction from New York. Mobley indicated that Defendant had been "dissatisfied with my opinions about the outcome of his case and my advice . . . . He has made it very clear that he is not pleased with those opinions and that advice [based on the evidence and potential defenses]." *Id*. at 4.

However, counsel had negotiated with the Government and obtained a concession, written into the plea agreement, that the prior New York conviction would not be used to enhance Defendant's sentence under 21 U.S.C. § 851. Additionally, while Defendant contends in this § 2255 motion that if he had had another lawyer, he would have gone forward with trial, his claims are belied by the record. Following Defendant's statement that he did not trust counsel's advice, *id*. at 18, the court inquired:

> Well, what about it do you not trust? It sounds to me like you are the one that made the decision to tell him to try and negotiate a plea.
>
> Defendant: Yeah – yeah, that was –

---

[8]On February 23, 2009, a "Motion to Quash Indictment and/or Inspection of Grand Jury Minutes" was filed on Defendant's behalf. An individual purporting to be a relative of Defendant hand-delivered the motion to the Clerk of Court for filing.

[9]This portion of the transcript was released to the Government when Defendant filed his § 2255 motion and cited extensively to the *ex parte* portion of the transcript.

12

Court: And that's what he did.

Defendant: – decision –

Court: You told him to go in that direction?

Defendant: Right.

*Id.* The court then determined:

> It seems like [the prosecutor] has made several concessions in your case that are favorable to you. Your statement that you don't trust Mr. Mobley is not backed up by anything that I can see objectively that he had done wrong in your case, or that you have been prejudiced by. You have waited until the eve of jury selection to raise this, and I don't see an inability to communicate. It seems to me that you are [ ] still able to communicate with Mr. Mobley. And if you have a rational reason for not trusting him then I would relieve him. But I don't see any rational reason for not trusting him just because you were able to get a document about your prior conviction that he has not yet gotten. He knew that he was waiting to see what the government was going to produce on that, and he would have a chance to address it either at – prior to a plea or, if you decided to go to trial, it really wasn't pertinent until you got to sentencing.

*Id.* at 20-21.

Defendant thereafter decided to plead guilty. During the plea colloquy, Defendant voiced his satisfaction with counsel:

> Court: Are you fully satisfied at this time with the advice, counsel, and representation that you have been provided in this case by Mr. Mobley?
>
> Defendant: Yes, Your Honor.
>
> Court: At this point is there anything that you have asked him to do that he has failed to do?
>
> Defendant: I – I asked him to do something that he's going to do for me, but he hasn't done it yet. But, you know, he hasn't – no.
>
> Court: Is there something that you asked him to do that he's not yet done and you think he should have done it by now?
>
> Defendant: No.

13

> Court: All right. Is there anything he did do that you disagree with or think he should not have done?
>
> Defendant: No, Your Honor.
>
> Court: This morning, you basically were asking me to relieve him as your attorney, and I denied that motion. You have had subsequent conversations with him, Mr. Moore, and back now in front of the court, and you have signed a plea agreement. I'm not going to take a plea from someone who is dissatisfied with their lawyer. Are you fully satisfied with his services at this point?
>
> Defendant: Yes, Your Honor.
>
> Court: And you want to go forward with him as your lawyer?
>
> Defendant: Yes, Your Honor.

*Id.* at 49-50.

Defendant entered a guilty plea on February 25, 2009, and sentencing was thereafter set for June 2, 2009.

On May 13, 2009, Defendant filed a *pro se* motion to withdraw his guilty plea. ECF No. 105. Defendant sought to withdraw his plea "based on the grounds of ineffective assistance of counsel." Mot. at 1. The motion contended that counsel was ineffective in allowing Defendant to sign a plea agreement wherein Defendant waived the right to seek "records pertaining to the investigation or prosecution of this case . . . ." *Id.* at 2 (quoting Plea Agreement at para. 11). Additionally, Defendant contended that counsel was "ineffective" in failing to challenge the traffic stop in North Carolina. *Id.* at 3. Defendant argued counsel's alleged failure to challenge the constitutionality of the traffic stop warranted the withdrawal of Defendant's guilty plea.

On May 20, 2009, the undersigned held a hearing regarding Defendant's motion. Defendant contended that he had filed the motion because he wanted to contest the drug weights in the PSR, that Mobley would not file objections contesting all of the amounts Defendant wished to contest,

and that Defendant wished to hire another lawyer to contest those amounts. Tr. of Hrg. at 7 (ECF No. 119, filed June 10, 2009). The undersigned determined that Defendant had contacted Marcia Shein, counsel admitted to practice in the State of Georgia.[10] Defendant indicated that Ms. Shein (who eventually represented Defendant on appeal) had informed him that if he secured a continuance of sentencing of at least sixty days, she would take his case. However, Defendant would also have had to retain a lawyer admitted to practice before this Court, who thereafter would be required to seek Ms. Shein's admission to practice *pro hac vice*. *Id*. at 13.

The court determined, in its discretion, that Defendant was "not going to be satisfied no matter what. And generally in that situation appointing another lawyer does not improve anything." Tr. at 12. The court found that the request to withdraw the guilty plea was made after the PSR was produced, and thereafter concluded "[a]s far as whether or not you switch lawyers now, I don't see any real basis for switching lawyers, other than something you've created yourself, which is an inability to get along with Mr. Mobley for not any rational reason[ ]." Mot. Hrg. Tr. at 14 (ECF No. 119, filed June 10, 2009). At the conclusion of the hearing, the court made the following findings:

> First as to the claim of ineffective assistance of counsel, the court finds that there's been no showing of ineffective assistance of counsel here, that the plea agreement that was negotiated was a favorable plea agreement both as to the North Carolina situation and the South Carolina situation, that he was able to accomplish several very favorable points as a result of the plea agreement, particularly the withdrawal of the [§] 851 enhancement and the agreement to recommend no prosecution in North Carolina. The issue that is raised in this written motion concerning the waiver of the right to seek records concerning the case under the FOI and Privacy Act is a standard waiver that's in I think every plea agreement I take. And all that means is that after your case is over in the future you would not seek records concerning your case beyond the records that already had been produced in your case from

---

[10]While admitted to practice in the Fourth Circuit Court of Appeals, Ms. Shein is not admitted to practice in the District of South Carolina.

15

> government agencies. So it has no bearing on the actual production of records during the prosecution at all. It's a totally different issue.
>
> As to the request to withdraw the plea, it's primarily based on grounds of ineffective assistance and that other point which I've covered. So the two bases for the request to withdraw the plea lack any legal merit at all. The request is made only after the presentence report has been produced and negotiations have taken place concerning the drug weights, which again have gone in the defendant's favor. And it appears that while the defendant has made it very difficult Mr. Mobley has been able to communicate with him and do his job, and the defendant by his own difficulty and unwillingness to cooperate with his counsel has caused the problems that are occurring between counsel and the defendant. So I find that he has failed to show a basis at this late date for dismissing his counsel, that the fact he wants to bring in out-of-state counsel who might be able to get to the case in 60 days is not sufficient to meet this court's schedule or requirements. And so the court denies all of those requests.

*Id*. at 26-27.

The court thereafter allowed Defendant to file *pro se* objections to the PSR, including objections to any and all drug weights he contested. Based upon extensive *pro se* objections filed by Defendant, a two-day contested sentencing hearing was held on July 14 and 15, 2009. Defendant was represented by counsel Mobley, and the court considered all of Defendant's objections, which were voluminous. The Government called six (6) witnesses to establish the drug weights and sentencing enhancements contained in the PSR, all of whom were cross-examined by counsel. Defendant thereafter chose not to testify or submit other evidence. The court found that based upon the testimony, the Government had proved, by a preponderance of the evidence, that Defendant had conspired to distribute approximately 3.3 kilograms of heroin, thereby establishing a base offense level of 34. *See* Tr. of Sentencing Hrg (Vol II) at 82.[11]

---

[11] Defendant received a four-level enhancement for his role in the offense, resulting in a total offense level of 38. Coupled with Defendant's criminal history category of III, he faced a guideline range of 292-365 months' imprisonment.

Defendant expressed no dissatisfaction with counsel at that time, nor did he indicate that he was being "forced" to proceed at sentencing with counsel not of his choosing. Defendant was afforded the opportunity to raise any and all objections, resulting in a two-day contested sentencing hearing.

Defendant produced no rational reason why he should not continue with Mobley. Defendant did not file a motion to withdraw his plea or move to substitute counsel until *after* the PSR had been produced to him.[12] The gist of Defendant's complaint was that he and counsel disagreed about whether (or to what extent) drug weights should be challenged. As noted above and as established by the record, Defendant seemed to be largely responsible for any difficulties between him and Mobley. Moreover, the court inquired extensively into Defendant's dissatisfaction with counsel and adequately explained the reasons for the denial of Defendant's request to withdraw his guilty plea and for substitution of counsel on the record. Therefore, as the record does not support the conclusion that this court erred in denying Defendant's request to hire new counsel, the Fourth Circuit Court of Appeals would not have found an abuse of discretion in this court's denial of substitution of counsel. As such, Defendant cannot establish prejudice under *Strickland* in any purported failure of appellate counsel to raise a *Gonzalez-Lopez* argument on appeal, and this claim for relief fails on the merits.

---

[12]Defendant's pre-plea dissatisfaction was fully developed prior to and during the entry of Defendant's guilty plea. *See* discussion, *supra*.

**CONCLUSION**

For these reasons and for the reasons stated in the Government's response, which this court finds to be correct and incorporates as additional findings, the court **grants** the Government's motion for summary judgment as to Defendant's claims for relief, and this matter is dismissed with prejudice.

**CERTIFICATE OF APPEALABILITY**

The governing law provides that:

> (c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is **denied**.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
May 30, 2012